UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA,

                                        12 CV 626 (SJ)

       v.

                                        <u>MEMORANDOM
AND ORDER</u>

ANASTASIA DIATLOVA,

       Defendant.
-------------------------------------------------X

A P P E A R A N C E S

BRIDGET RHODE
United States Attorney, EDNY
271 Cadman Plaza East
Brooklyn, New York 11201
By:   Richard Tucker
       Claire S. Kedeshian
       Hilary Jager
       Una A. Dean
Attorneys for the United States

WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas
40th Floor
New York, NY 10019
Morris Fodeman
Megan Wall-Wolff
Attorney for Defendant Anastasia Diatlova

JOHNSON, U.S.D.J.:

      On October 26, 2015, defendant Anastasia Diatlova ("Diatlova" or "Defendant") was convicted of two counts: (1) conspiring both to violate the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-1707

1

("IEEPA"), and to commit wire fraud, pursuant to Title 18 U.S.C. § 1343 (Count One) ; and (2) one substantive count of violating the IEEPA by shipping an export-controlled microelectronic to Russia without obtaining the required permission from the Department of Commerce ("DOC") in her capacity as a salesperson at Arc Electronics. Presently before the Court is Defendant's motion for a Judgment of Acquittal and a New Trial pursuant to Federal Rules of Criminal Procedure 29 and 33, respectively.[1] Based on the submissions of the parties, the oral arguments held on June 29, 2016 and December 1, 2016, and for the reasons stated below, Diatlova's Rule 33 motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

The facts and circumstances surrounding the instant action are, in large part, set forth in this Court's September 2014 order denying various pre-trial motions and familiarity therewith is assumed. (Dkt. No. 256.) Briefly, on November 6, 2014, Diatlova and ten other individuals were charged in a 17-count superseding indictment related to their employment at Arc Electronics, Inc. ("Arc"), a Houston-based company "engaged in the export of microelectronics and other high-tech products." (See Superseding Indictment ¶ 1.) The following is a summary of the evidence adduced at trial as it relates to Diatlova.

Arc Electronics was founded in 2001 by Alexander Fishenko ("Fishenko") who owned and operated Arc until his 2012 arrest. Alexander Posobilov

---

[1] Diatlova's Rule 29 motion was denied on October 21, 2015, and will not be reconsidered herein.

2

("Posobilov") was the procurement manager at Arc, and Shavkat Abdullaev ("Abdullaev") was the shipping manager. Diatlova, along with Lydmila Bagdikian, Svetalina Zagon and Sevinj Taghiyeva, were all saleswomen at Arc. There was no evidence that their job duties went beyond the clerical. While Arc presented itself as a manufacturer of traffic lights and other railway components, it did not manufacture any goods of its own making. Arc re-sold products obtained from United States corporations to entities in Russia. Some of these products are subject to export controls under the IEEPA and require permission from the Department of Commerce before they are sold to individuals and corporations located abroad in certain countries.

Diatlova began working at Arc in July of 2011 until her 2012 arrest. She was among the lowest-earning employees, if not the lowest. She earned a gross income of approximately $2800 per month. Her job consisted of assisting in filling orders for various parts. The orders were negotiated by co-defendant Posobilov, Arc's procurement manager, and forwarded to Diatlova. Evidence was presented at trial that certain companies demanded of Arc certification that the electronics were in fact being incorporated into products then sold abroad without having violated the IEEPA. Specifically, representatives from Xilinx, Toshiba and Hittite testified at trial to their corporate policy of insuring compliance with export control laws.

In her capacity of saleswoman, Diatlova was sometimes responsible for providing information as to the end-user of Arc products, not all of which were

P-049

export-controlled. However, the evidence at trial indicated that Diatlova did falsify end user information. In a June 8, 2012 instant message, Diatlova expressly suggested to a representative of Russia's Kirilll Forward Electronics that they provide the wrong end user to TriQuint, the United States seller, to wit: "Perhaps we can give them a different END User, for example: our end user = NIIR Federal State Unitary Enterprise radio research and Development Institution ("NIIR")...Will that work?" Kirill Yevdokimenko responded, in part, "We use NIIR much too often ☺. Let's give it a try...There's no harm in it, if they say no we'll say we can't ship it."

In another instance, on April 3, 2012, Diatlova again suggested using NIIR as an end user when co-defendant Yuri Savin ("Savin") indicated that the real end user could not be determined:

> Savin: So it's hard to say for me who the real end user is...I guess it's Kobra after all, but at least NIIR has a website in English.
>
> Diatlova: Okay the latter ☺

(Gov't Ex. 123-B(T).)

However, the government presented no evidence that Diatlova either provided false end user information for items actually controlled by the IEEPA or knew that others were providing false end user information to Unites States-based entities for the purposes of violating the IEEPA.

4

## DISCUSSION

Rule 33 permits a district court to grant a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33(a). "This rule 'confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice.'" United States v. Polouizzi, 564 F.3d 142, 159 (2d Cir. 2009) (quoting United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992)). "In deciding whether to grant a motion for a new trial, the judge is not required to view the evidence in the light most favorable to the prosecution." United States v. Levy, 594 F. Supp. 2d 427, 435 (S.D.N.Y. 2009) (internal quotation marks omitted). In addition, "the court is entitled to weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." United States v. Robinson, 430 F.3d 537, 543 (2d Cir. 2005) (internal quotation marks omitted).[2] "Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, 'it is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of the credibility assessment.'" United States v. Ferguson, 246 F.3d 129, 133–34 (2d Cir. 2001). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." Id. at 134.

---

[2] But see United States v. Thorpe, 122 F.3d 1058, 1997 WL 434086, at *2 (2d Cir. Aug. 1, 1997) (unpublished) ("[A] court should not substitute its own determination of the credibility of the witnesses for that of the jury.") (citations and internal quotation marks omitted).

5

P-049

## I.  COUNT EIGHT

In this case, the government concedes that there is no evidence that Diatlova acted with specific intent to violate the IEEPA by shipping a Micross statis random access memory chip ("SRAM Chip") to Russia without obtaining permission from the Department of Commerce. The government's case on this Count essentially rests on inferences. When pressed by this Court at multiple oral arguments to identify the evidence of intent to ship a controlled part on February 23, 2012, the government, after document-dumping the Court with thousands of pages of transcripts to "see," made four points in aid of the argument that Diatlova had the requisite intent to violate the IEEPA: (1) Diatlova received training on export controls and was aware that microelectronics, when mailed to Russia, are "generally subject to U.S. export control laws (emphasis added);" (2) the higher-ups at Arc (Fishenko, Posobilov and Abdullaev) "routinely lied and fabricated documents in order to evade export control restrictions"; (3) Diatlova filled out a "End-Use Certification/Statement of Assurance" indicating that the end user was Izhevsky Radio Plant, when the recipient was instead Atrilor, LTD, making her, at a minimum, guilty of aiding and abetting the illegal shipment of that part; and that proof exists that she was aware in April of 2012, upon arrest, that the part at issue was restricted. This Court finds this evidence to be insufficient proof of specific intent and that a conviction on Count Eight would constitute a "manifest injustice" in light of the flimsiness of this evidence, considering in particular (1) that the

P-049

government was given numerous attempts to pin down evidence of Diatlova's intent to make an illegal shipment on February 23, 2012; and (2) its inferences amount to her now being aware that the product at issue is subject to export controls; and (3) that some of her co-defendants were aware that some products were being sold in violation of the IEEPA.

On the issue of aiding and abetting, the jurors in this case were also charged that "[i]n order to aid or abet another to commit a crime, it is necessary that the defendant willfully and knowingly associate [her]self in some way with the crime, and [s]he willfully and knowingly [sought] to help make that crime succeed. (See Jury Charge (Dkt. No. 428-1 at 57 (emphases added).) The government has simply failed to show that Diatlova was aware on February 23, 2012, and not some later date, that the part shipped was indeed intentionally shipped in violation of the IEEPA. While the jury may have found that she violated the IEEPA, it is this Court's view that the prejudicial spillover drawn from incriminating audio recordings of Fishenko and Posibilov, testimony by co-defendant Viktoria Klebanova, which, notably did not implicate Diatlova in any way, and the actual shipments made by other Arc employees, led the jury to rely on circumstantial evidence that, in this Court's view, fails to establish a specific intent to violate the IEEPA. Diatlova is hereby GRANTED a new trial on Count Eight.

## II. COUNT ONE

Diatlova was also convicted of conspiring to violate the IEEPA and conspiring to commit wire fraud.

### A. Conspiracy to violate the IEEPA

To prove the existence of a conspiracy, the government must show "(1) an agreement between the defendant and at least one other person to commit an offense; (2) that the defendant knowingly participated in the conspiracy with the specific intent to commit the illegal object of the conspiracy, and; (3) that during the conspiracy an overt act in furtherance of the illegal objective was committed by a member of the conspiracy." United States v. Mermelstein, 487 F. Supp. 2d. 242, 251 (E.D.N.Y. 2008) (quoting United States v. Zandstra, 2000 WL 1368050, *3 (S.D.N.Y.2000) and United States v. Salameh, 152 F.3d 88, 145–46 (2d Cir. 1998).

Here, the indictment reads that Diatlova and her co-defendants purchased microelectronics from United States-based manufacturer and distributors and arranged for the export of those goods to various Russian procurement companies. (See Redacted Superseding Indictment ¶ 7.) The instrument also accuses her with "willfully export[ing] from the United States to Russia items under the jurisdiction of the [DOC] to wit: microelectronics, without first having obtained the required licenses." (Id. at 15. (emphasis added).) It is this last clause that gives the Court pause.

P-049

For many of the reasons stated, supra, the government has failed to sufficiently demonstrate that Diatlova affirmatively joined a conspiracy with other employees of Arc to violate the IEEPA. Outside of the substantive count, for which this Court found there to be insufficient evidence, she is not charged with shipping any other IEEPA-controlled products, nor the knowledge that any such shipments violated export control laws. Therefore, an agreement between Diatlova and another to violate the IEEPA is wanting in this case. Because, on a Rule 33 motion, the Court is not required to view the evidence in the most persuasive prosecutorial angle, a new trial on this Count is warranted and Diatlova's motion is GRANTED.

### B. Conspiracy to Commit Wire Fraud

The elements of wire fraud are "(i) a scheme to defraud; (ii) to get money or property, (iii) furthered by the use of interstate mail or wires." United States v. Autuori, 212 F.3d 105, 115 (2d Cir. 2000); Unites States v. Pierce, 224 F.3d 158 (2d Cir. 2000); United States v. Martin, 411 F. Supp. 2d 370, 372 (2006). As such, the scheme to defraud does not have to be to defraud someone of money. It can, as charged, include participating in a scheme to obtain property, for whatever reason. In this case, as demonstrated above, Diatlova did participate in a scheme by either fabricating or randomly assigning foreign companies as the end users of Arc products. While this Court finds that the government failed to prove that any of

P-049

these lies resulted in a violation of the IEEPA, there is sufficient evidence in the record to conclude that Diatlova knew these lies enabled Arc to obtain microelectronics that Arc would not have otherwise been able to obtain. For these reasons, the conviction for conspiracy to commit wire fraud stands and that portion of her motion is DENIED.

### C. Venue

For the reasons stated at the December 1, 2016 hearing and sentencing of co-defendant Abdullaev, venue for items predictably dispatched from John F. Kennedy Airport to Russia is proper in this district. Diatlova's motion as to venue is therefore DENIED.

### CONLUSION

For the foregoing reasons, Diatlova's motion for a new trial is GRANTED as to the conspiracy charge in Count 1(a) and as to Count EIGHT, and DENIED as to the conspiracy charged in Count 1(c).

SO ORDERED

Dated: Brooklyn, New York
May 3, 2017